Filed 1/7/21  In re Moses S. CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re MOSES S. et al., Persons Coming Under the Juvenile Court Law. | B301676 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>SANDY T. et al.,<br><br>        Defendants and Appellants. | Los Angeles County Super. Ct. No. 19LJJP00051 A–D |

APPEALS from orders of the Superior Court of Los Angeles County, Steven E. Ipson, Judge Pro Tempore. Affirmed.

Mitchell Keiter, under appointment by the Court of Appeal, for Defendant and Appellant Sandy T.

Judy Weissberg-Ortiz, under appointment by the Court of Appeal, for Defendant and Appellant Morris S.

Mary C. Wickham, County Counsel, Kim Nemoy, Assistant County Counsel, and Brian Mahler, Deputy County Counsel, for Plaintiff and Respondent.

## INTRODUCTION

Sandy T. (mother)[1] and Morris S. (father) appeal from the juvenile court's disposition orders declaring their four children dependents of the court and removing them from the parents' custody. The parents complain that insufficient evidence supports the jurisdiction findings that father's physical abuse of the oldest child and the parents' history of domestic violence placed the children at risk of serious physical harm. Mother also contends the court prejudicially erred when it precluded her from calling the second oldest child as a witness at the jurisdiction hearing. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. Initiation of the Dependency Proceedings

Mother and father have four children: Moses (born in 2005); Zoe (born in 2008); Mya (born in 2013); and Noah (born in 2017). The family came to the attention of the Department of Children and Family Services (Department) in mid-January 2019 because of a child abuse referral.

The night before the referral, mother saw Moses chatting online about how he had given another student $40 to buy a cell phone. Moses asked mother not to tell father because he would go "crazy." When father got home from work, mother told him about

---

[1] At times, mother's first name is also spelled "Sanndy."

the money. Father became furious, went to Moses's bedroom, and beat the child.

Father slapped Moses on the left side of the child's face causing him to fall face first onto his bed. When Moses stood up, father slapped him again and punched the back of his head several times with a closed fist. Father then removed his belt and hit Moses across the head with it about seven times. Father broke items around Moses's room and threw the child back onto his bed. While Moses was on the bed, father hit him with the belt across the left side of the child's body.

At one point, mother entered the room, but father shoved her out of the way. After father stopped hitting Moses, he made the child go downstairs to do homework while he ran over Moses's skateboards with his car. Father told Moses that if he didn't come home the next day with "suspension papers" for fighting the student he gave money to, father would " 'whoop' " him at school in front of his friends. The next morning, mother told Moses, " '[y]ou bring this upon yourself.' "

Moses also reported past child abuse. The parents started physically abusing Moses when he was about seven years old. Mother used to hit him when he was younger, but father now abuses him. The other most recent incident of abuse occurred about a month or two earlier, when father threw Moses into the child's closet door, breaking it. The parents also call Moses "dumb" and "stupid," which makes him feel depressed and unconfident. Because of the parents' constant physical and verbal abuse, Moses has contemplated suicide.

According to Moses, the parents also hit each of his siblings, but not to the same extent that they abuse him. For example, mother slapped Mya with a sandal and struck Zoe with

an open hand and closed fist around December 2018. Father also hit Zoe with a belt about a year earlier, and Moses once heard father slap Noah, who was only about one year old at the time.

Moses also told the Department that father abuses mother. In May 2018, father became upset with mother and threw a glass of water at her. The glass hit mother's arm. On another occasion when Moses was in second grade, father tried to stab mother with a " 'combat knife.' " Moses was afraid that if father killed mother, he'd kill Moses too because the child witnessed the altercation. Father also pushed and punched mother " 'once,' " but the parents currently only fight " '[e]very now and then.' " Moses saw bruises on mother's body, but she refused to tell him how she got them.

Moses believed mother was afraid of father and unable to protect herself or the children from his abuse. Moses didn't think mother would make father move out of the home because he was the family's sole financial provider.

Law enforcement took Moses into protective custody the same day they received the child abuse referral. Shortly after being detained, Moses was examined by a physician. Moses sustained bruising on his left ear, left temple, left arm, left thigh, and buttocks. Specifically, the child suffered the following injuries: (1) two parallel eight centimeter erythematous lines on his upper left arm, with swelling and bruising; (2) bruising and mild swelling over the top of his left ear, with bruising both in front of and behind the ear; (3) an approximately two centimeter area of swelling on his left temple; (4) two erythematous patches on his left forearm; (5) and a 10 centimeter long bruise extending from his upper left thigh to his buttocks. The physician who examined Moses told the Department that the child's statements

4

about father's abuse were consistent with the physical injuries the child suffered.

The night Moses was detained, mother brought Zoe, Mya, and Noah to the paternal grandmother's home. When mother dropped the children off, the grandmother heard mother tell someone over the phone, " 'I stood at the door saying stop, stop [father], shut up Moses.' " According to the grandmother, the siblings were mad at Moses "for what he caused." The Department removed Zoe, Mya, and Noah from their parents' custody a couple of days later.

After Moses was detained, neither mother nor father inquired about his whereabouts or how he obtained his injuries. According to the Department's social worker, the parents did not appear "interested" to learn "what happened" to Moses after he was detained.

In late January 2019, the Department filed a dependency petition alleging: (1) father's physical abuse of Moses and mother's failure to protect Moses from that abuse place the children at risk of serious physical harm (Welf. & Inst. Code,[2] § 300, subds. (a), (b), (j); a-1, b-1, and j-1 allegations); (2) the parents' history of domestic violence places the children at risk of serious physical harm (§ 300, subds. (a), (b); a-2 and b-2 allegations); and (3) the parents' emotional abuse of Moses creates a substantial risk that the child will suffer serious emotional damage, including severe anxiety, depression, withdrawal, and aggressive behavior (§ 300, subd. (c); c-1 allegation).

---

[2] All undesignated statutory references are to the Welfare and Institutions Code.

At the detention hearing, the court found the petition alleged a prima facie case under section 300. The court ordered Moses, Zoe, Mya, and Noah detained from their parents' custody.

## 2.    Jurisdiction and Disposition

After the petition was filed, mother and father refused to speak with the Department or law enforcement about any of the allegations. Father also was charged with misdemeanor child abuse, and the criminal court issued a three-year restraining order protecting Moses from father.

Noah was too young to answer questions, but Zoe and Mya denied being hit by their parents, and the three children didn't show any physical signs of abuse. Zoe had seen father hit Moses with his hands once, and Mya didn't know what the parents do when Moses gets in trouble. During the January 2019 incident, Zoe was in a different part of the house when father was beating Moses, so she didn't "know what happened." Mya and Zoe felt safe living with their parents.

The Department interviewed Toni S., a family friend with whom Moses was placed after the detention hearing. Mother and father told Toni that they wanted Moses to live in a foster home separate from his siblings. The parents wanted Moses to "suffer" because he caused his siblings to be removed from the parents' custody. Another family friend, M.V., reported that mother and father also told her they wanted Moses to live with a stranger to "punish" him for disclosing the abuse. Toni believed mother was coaching Zoe on what to tell social workers about the underlying allegations.

After the detention hearing, mother and father started participating in services to address issues related to child abuse and domestic violence. Mother completed 15 domestic violence

classes, with "adequate" participation, and 11 parenting classes, and she was regularly attending mental health therapy. Father completed a parenting program and attended additional sessions. According to the program supervisor, father was a "mentor and leader" for other parents in the program. Father also completed a 26-week anger management course.

The court held the jurisdiction hearing over three days in May and August 2019. Several witnesses testified, including mother, Moses's former gym teacher, and several Department employees. The gym teacher didn't notice any bruises on Moses in January 2019. But the teacher wasn't sure if he ever was in a position to notice if Moses had any visible injuries, and most of the students wore sweatpants and sweatshirts in class during that time of year.

The dependency investigator and the children's social worker didn't take photographs of Moses's room, and they didn't have independent evidence to confirm Moses's statements that father broke the child's belongings when he beat Moses in January 2019. They also didn't find any physical evidence to corroborate Moses's statements that the parents abused his siblings. Although Zoe denied that the parents ever hit her, the investigator believed she had been coached to not respond truthfully to the Department's questions about the petition's allegations.

The Department's services worker confirmed that mother and father participated in services and had completed several programs. But, according to the services worker, mother had yet to acknowledge she believed Moses's statements concerning the parents' abuse.

Mother testified about the programs she completed and what skills she obtained. Although mother completed a domestic violence course, she didn't believe she needed to attend it because she denied that father ever abused her. She also denied ever seeing, or asking about, Moses's injuries after the January 2019 incident.

The court sustained the a-1, b-1, and b-2 allegations and dismissed the remaining allegations. At the disposition hearing, the court declared Moses, Zoe, Mya, and Noah dependents of the court, removed them from their parents' custody, and awarded mother and father reunification services. Mother and father appeal from the disposition orders.

In June 2020, the court returned Zoe, Mya, and Noah, but not Moses, to mother's and father's custody.

## DISCUSSION[3]

### 1. The Jurisdiction Findings

Mother and father contend insufficient evidence supports the jurisdiction findings. As we explain, substantial evidence

---

[3] Mother attached to her opening brief a copy of a request for judicial notice that she filed in a separate and unrelated appeal involving different parties. The attached request includes excerpts from the appellate record in Los Angeles Superior Court Case No. 18CCJP03199A (Case No. 18CCJP03199A), another unrelated dependency case involving different issues and parties from those involved in this appeal. Those excerpts include portions of reports filed by the Department, a letter filed by a therapist, and a portion of the reporter's transcript from one of the hearings in the unrelated case. Mother does not, however, ask that we take judicial notice of any of the excerpts included in the attached request, but instead states that she

8

supports the a-1 and b-1 findings based on father's physical abuse of Moses.

### 1.1. Applicable Law and Standard of Review

Under section 300, subdivision (a), a juvenile court may exercise dependency jurisdiction if "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm inflicted nonaccidentally ... by the child's parent ... ." Section 300, subdivision (b), also allows the court to exercise dependency jurisdiction if the " 'child has suffered, or *there is a substantial risk that* the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent ... to adequately supervise or protect the child ... .' " (*In re E.E.* (2020) 49 Cal.App.5th 195, 205 (*E.E.*).)

The juvenile court doesn't need to wait until a child is seriously injured before exercising jurisdiction if there is evidence that the parent's conduct places the child at risk of future harm. (*In re Yolanda L.* (2017) 7 Cal.App.5th 987, 993.) In determining whether the parent's conduct is likely to recur in the future, courts may consider evidence of the parent's past conduct. (*In re*

---

attached the request simply for "the convenience of all counsel and justice[s] involved in this case."

We grant the Department's request to strike from the appellate record in this case the request for judicial notice attached to mother's opening brief, including the excerpts from the appellate record in Case No. 18CCJP03199A, because mother has not asked us to take judicial notice of any of the attached excerpts and those excerpts include confidential identifying information concerning parties in a separate dependency proceeding. (See Cal. Rules of Court, rule 8.401(b)(1).)

*N.M.* (2011) 197 Cal.App.4th 159, 165.) Likewise, a parent's denial of wrongdoing or failure to recognize the negative impact of his or her conduct is a relevant factor in the court's determination of risk under section 300. " '[D]enial is a factor often relevant to determining whether persons are likely to modify their behavior in the future without court supervision.' " (*In re A.F.* (2016) 3 Cal.App.5th 283, 293.) "One cannot correct a problem one fails to acknowledge." (*In re Gabriel K.* (2012) 203 Cal.App.4th 188, 197.)

We review jurisdiction findings for substantial evidence. (*In re I.J.* (2013) 56 Cal.4th 766, 773.) Evidence is "substantial" if it is reasonable, credible, and of solid value. (*In re R.V.* (2012) 208 Cal.App.4th 837, 843.) We review the record in the light most favorable to the court's findings and draw all reasonable inferences from the evidence in favor of those findings. (*In re R.T.* (2017) 3 Cal.5th 622, 633.) "The appellant has the burden of showing there is no evidence of a sufficiently substantial nature to support the findings or order." (*R.V.*, at p. 843.)

### 1.2.   Substantial evidence supports jurisdiction.

There is little question that substantial evidence supports the court's findings sustaining the a-1 and b-1 allegations based on father's physical abuse of Moses. Father violently beat Moses in January 2019, and Moses reported that father abused him on numerous occasions in the past. During the January 2019 incident, father repeatedly slapped and punched the child's head and face, removed his belt and hit Moses's head with it about seven times, threw the child onto a bed, and continued to hit the child's body with the belt. The doctor who examined Moses the day after the incident confirmed that the child's injuries were consistent with being beaten by an adult, and Moses's

10

grandmother overheard mother tell someone on the phone that she told father to "stop" while he was beating Moses.

The evidence also was sufficient to support a finding that father inflicted serious physical harm on Moses. The examining doctor found numerous injuries on Moses's body. Moses had bruises across the left side of his face, around his left ear, on his left arm, and on his left thigh extending up to his buttocks, and he had red erythematic lines over his left arm. Moses also had a knot on the back of his head and swelling over his left temple and left ear. (See *In re Mariah T.* (2008) 159 Cal.App.4th 428, 438 [sufficient evidence of serious physical harm where mother left a single red line and purple and yellow bruises on her child after striking him with a belt].)

There also was substantial evidence that Moses's siblings— Zoe, Mya, and Noah—faced a risk of serious physical harm because of father's physical abuse. While father's severe abuse of Moses in January 2019 is sufficient to support a finding that his siblings were also at risk of suffering physical harm, there was evidence that father also struck Zoe, Noah, and mother in the past. It was, therefore, more than reasonable for the court to conclude that, because father engaged in escalating violence toward Moses and had struck Moses's siblings in the past, the siblings also faced a current risk of harm from father's issues with violence.

Father argues his participation in services leading up to the jurisdiction hearing shows he resolved any issues with violence that would pose a risk of harm to the children. As proof, father points to his completion of parenting and domestic violence programs, his decision to attend additional parenting classes beyond those required by his program, and the parenting

11

program's supervisor's statements that father displayed initiative during class and was viewed as a mentor to other fathers in the program. But the fact that father participated in, or even completed, programs addressing his issues with violence, while commendable, doesn't necessarily mean he sufficiently resolved those issues to preclude the court from finding the children continued to face a risk of harm at the time of the jurisdiction hearing. Indeed, throughout the proceedings, father refused to cooperate with the Department's investigation, and he never admitted or acknowledged his role in abusing Moses that led to the family coming to the court's attention. It was therefore more than reasonable for the court to conclude that despite his completion of parenting and domestic violence programs, father had yet to resolve his issues with violence that pose a risk to the children's safety. (See *E.E.*, *supra*, 49 Cal.App.5th at p. 213 [parent's evasiveness and refusal to acknowledge responsibility for conduct giving rise to the dependency proceedings supports finding that child faced a current risk of harm].)

It also was reasonable for the court to find mother failed to protect the children from father's physical abuse. Moses reported that mother was aware of father's abuse but never took steps to protect the children, such as moving them away from father or making father move out of the home. Indeed, mother witnessed the January 2019 incident, but did nothing to stop father from striking Moses. Rather, mother later blamed Moses for the incident, telling the child that he brought the abuse upon himself. Mother also refused to cooperate with the Department's investigation into father's abuse of Moses, she denied the abuse occurred, and she testified at the jurisdiction hearing that she

never saw or inquired about Moses's injuries after the January 2019 incident.

We reject father's argument that the court erred in sustaining the physical abuse allegations because the evidence shows it's "plausible" that Moses sustained his injuries skateboarding or fighting another student at school, rather than through father's abuse. Father essentially asks us to make our own factual findings, ignoring the substantial evidence standard of review. Even if there was evidence from which a court could have found father did not cause Moses's injuries, we must resolve all evidentiary conflicts in favor of the court's findings. (*In re Mia Z.* (2016) 246 Cal.App.4th 883, 891 ["we resolve all conflicts in the evidence, and indulge all reasonable inferences that may be derived from the evidence, in favor of the court's findings"].)

We also reject father's claim that insufficient evidence supports the physical abuse findings because the Department didn't present independent evidence corroborating Moses's statements that father abused him in the past. As we explained above, the Department did present corroborating evidence. The examining doctor confirmed that Moses's injuries were consistent with the child being physically abused, and Moses's grandmother overheard mother tell someone that father beat Moses. In any event, it is well-settled that testimony "from a single witness, even a party, can be sufficient to support the trial court's findings." (*In re Alexis E.* (2009) 171 Cal.App.4th 438, 451.) Thus, the court was permitted to rely solely on Moses's testimony in finding father abused the child on multiple occasions.

Likewise, there is no merit to father's claim that the court shouldn't have believed Moses's statements about the physical abuse allegations because Moses has a history of being

13

untruthful and has suffered from "mental health issues" in the past. It is the function of the trial court, not the appellate court, to judge the credibility of witnesses. (*E.E.*, *supra*, 49 Cal.App.5th at p. 206.) We therefore will not disturb the court's credibility determinations on appeal. (*Estate of Young* (2008) 160 Cal.App.4th 62, 76 ["We may not reweigh the evidence and are bound by the trial court's credibility determinations."].)

In short, there is more than enough evidence to support the court's findings sustaining the a-1 and b-1 allegations. Because those findings are sufficient to maintain dependency jurisdiction over Moses, Mya, Zoe, and Noah, and because the parents don't challenge the case plans set forth in the disposition orders, we don't address mother's and father's challenges to the sufficiency of the evidence to support the b-2 allegation based on the parents' history of domestic violence. (*In re M.W.* (2015) 238 Cal.App.4th 1444, 1452 (*M.W.*) [a single jurisdiction finding is sufficient to maintain dependency jurisdiction over a child].)

## 2.    Exclusion of Zoe's Testimony

Mother contends the court committed reversible error when it excluded Zoe's testimony at the jurisdiction hearing. We disagree.

### 2.1.    Relevant Background

During the first day of the jurisdiction hearing, mother's counsel indicated she intended to call Zoe as a witness. Counsel believed Zoe would be a "conflict witness to describe what went on in the house" and to "expound what's in the report."

Zoe's counsel moved to exclude the child's testimony. Zoe's counsel argued the testimony would be cumulative of the statements Zoe made to the Department denying any physical

abuse and domestic violence in the home. Because the parents didn't dispute those statements, counsel argued the testimony would also unnecessarily prolong the jurisdiction hearing. The court granted the motion to exclude Zoe's testimony.

During the second day of the jurisdiction hearing, mother's counsel renewed her request to have Zoe testify. Counsel wanted to call Zoe to testify about whether Moses was being "vindictive" when he accused his parents of abusing the children and engaging in domestic violence. Counsel also believed that Zoe could corroborate the parents' defense that they never abused Moses. The court denied the request, explaining it would be speculative to assume that Zoe would testify that Moses sought vindication against his parents when he reported the abuse.

### 2.2.  Applicable Law and Standard of Review

While parents have a due process right to a meaningful jurisdiction hearing with the opportunity to present evidence (*Ingrid E. v. Superior Court* (1999) 75 Cal.App.4th 751, 757), they " 'are not entitled to full confrontation and cross-examination.' [Citation.]" (*Maricela C. v. Superior Court* (1998) 66 Cal.App.4th 1138, 1146.) Rather, "[d]ue process requires a balance. [Citation.] The state's strong interest in prompt and efficient trials permits the nonarbitrary exclusion of evidence [citation], such as when the presentation of the evidence will 'necessitate undue consumption of time.' [Citation.] The due process right to present evidence is limited to relevant evidence of significant probative value to the issue before the court." (*Id.* at pp. 1146–1147.)

A court may exclude a minor's testimony if it is irrelevant to the issues before the court. (Evid. Code, § 350; *In re Jennifer J.* (1992) 8 Cal.App.4th 1080, 1089 [a juvenile court may refuse to require a minor to testify in a dependency proceeding].) Evidence

15

is relevant if it tends to prove or disprove any disputed material fact and is not cumulative of other evidence. (*People v. Scheid* (1997) 16 Cal.4th 1, 13.) We review a court's decision to exclude evidence for abuse of discretion. (*In re Cole C.* (2009) 174 Cal.App.4th 900, 911.)

### 2.3. Any error in excluding Zoe's testimony was harmless.

Mother contends the court committed prejudicial error in excluding Zoe's testimony because the child could have corroborated the parents' denial of the child abuse and domestic violence allegations. Specifically, without Zoe's testimony, mother argues, the court could not evaluate the credibility of the child's statements denying her parents engaged in domestic violence or physically abused the children. Mother also insists Zoe's testimony could have discredited Moses's statements concerning father's physical abuse and the parents' history of domestic violence. We need not decide whether the court erred in precluding Zoe's testimony because, even assuming it was error to do so, the error was harmless beyond a reasonable doubt in light of the overwhelming evidence supporting the court's finding that father's physical abuse of Moses placed all four children at risk of serious harm. (See *In re Amy M.* (1991) 232 Cal.App.3d 849, 868 [error in precluding parents from calling witness during a dependency proceeding can be " 'quantitatively assessed in the context of other evidence presented in order to determine whether its admission was harmless beyond a reasonable doubt.' "].)

Zoe, for her part, denied that the parents abused her or any of the other siblings, and she claimed father had only hit Moses once with a bare hand in the past. But nothing in the record

indicates Zoe was in any position to witness the January 2019 incident, and in seeking to introduce the child's testimony, mother never claimed the child could testify about what occurred during the incident. In fact, Zoe told the Department she didn't "know what happened" during that incident because she was in a different part of the house from where father beat Moses.

In any event, as we explained above, Moses described in detail father's severe physical abuse during the January 2019 incident. Moses's description of the abuse was corroborated by at least two sources who did not live in family's home: the examining doctor who confirmed the child's injuries were consistent with physical abuse inflicted by an adult; and Moses's grandmother who, the day after the abuse occurred, overheard mother tell someone on the phone that she told father to "stop" when he was beating Moses the night before. Thus, in light of the evidence corroborating Moses's statements concerning the January 2019 incident, we are confident beyond a reasonable doubt that even if Zoe testified at the jurisdiction hearing that she didn't believe father abused Moses during the January 2019 incident or on any prior occasion, the court's findings concerning the a-1 and b-1 allegations would not have changed. Since those jurisdiction findings are sufficient to maintain jurisdiction over all four children, we need not address whether any testimony from Zoe could have affected the court's findings concerning the parents' history of domestic violence. (*M.W.*, *supra*, 238 Cal.App.4th at p. 1452.)

## DISPOSITION

The juvenile court's jurisdiction findings and disposition orders are affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


                                        LAVIN, J.

WE CONCUR:



EDMON, P. J.



EGERTON, J.


18